GREENBERG TRAURIG, LLP
DANIEL J. TYUKODY (SBN 123323)
*TyukodyD@gtlaw.com*
1840 Century Park East, Suite 1900
Los Angeles, CA 90067-2121
Telephone:  (310) 586-7700
Facsimile:  (310) 586-7800

Attorneys for Defendants
Bridgepoint Education, Inc.,
Andrew S. Clark, Kevin Royal, and Joseph L. D'Amico

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BRIDGEPOINT EDUCATION, INC., ANDREW S. CLARK, KEVIN ROYAL, and JOSEPH L. D'AMICO,<br><br>Defendants. | CASE NO. 19cv0460-WQH-AHG<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  February 18, 2020<br>Dept:  14B<br><br>ACTION FILED:        March 8, 2019 |

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ................................................................................................................. 1

II.  ARGUMENT ...................................................................................................................... 3

   A.   There Are No Allegations In The AC Satisfying The Standards Set Forth In WOW And Its Progeny Concerning Accounting Restatements. ....................................... 3

   B.   Plaintiffs' Post-Filing Theory of Fraud Is The Antithesis of Tellabs. .............................. 9

III. CONCLUSION ................................................................................................................... 10

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re A-Power Energy Generation Sys. Ltd. Secs. Litig.*,
  2012 U.S. Dist. LEXIS 79417 (C.D. Cal. May 31, 2012) ................................................. 8

*Acito v. Imcera Grp., Inc.*,
  47 F.3d 47 (2d Cir. 1995)..................................................................................................... 4

*In re ArthroCare Corp. Sec. Litig.*,
  726 F. Supp. 2d 696 (W.D. Tex. 2010)................................................................................ 8

*Bobbleheads.com, LLC v. Wright Bros., Inc.*,
  259 F. Supp. 3d 1087 (S.D. Cal. 2017)................................................................................ 2

*In re Countrywide Fin. Corp. Deriv. Litig.*,
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) ............................................................................... 6

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009)................................................................................................. 9

*Gebhart v. SEC*,
  595 F.3d 1034 (9th Cir. 2010) ............................................................................................. 1

*Higgenbotham v. Baxter Int'l, Inc.*,
  495 F.3d 753 (7th Cir. 2007) ............................................................................................... 4

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ............................................................................................. 8

*In re Maxwell Techs. Inc., Sec. Litig.*,
  18 F. Supp. 3d 1023 (S.D. Cal. 2014)................................................................................... 9

*In re McKesson HBOC, Inc. Secs. Litig.*,
  126 F. Supp. 2d 1248 (N.D. Cal. 2000) ............................................................................... 8

*N.M. State Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ............................................................................................. 7

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000).................................................................................................. 9

*In re Pac. Gateway Exh., Inc., Sec. Litig.*,
  169 F. Supp. 2d 1160 (N.D. Cal. 2001) ............................................................................... 8

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ............................................................................................... 8

*In re Refco, Inc. Sec. Litig.*,
  503 F. Supp. 2d 611 (S.D.N.Y. 2007) ........................................................................... 8

*Schneider v. Cal. Dep't of Corrections*,
  151 F.3d 1194 (9th Cir. 1998) ..................................................................................... 2

*Seaman v. Cal. Bus. Bank*,
  2013 U.S. Dist. LEXIS 155919 (N.D. Cal. Oct. 30, 2013) .......................................... 10

*In re Seitel, Inc. Sec. Litig.*,
  447 F. Supp. 2d 693 (S.D. Tex. 2006) ......................................................................... 8

*In re SilverMetals, Inc. Sec. Litig.*,
  26 F. Supp. 3d 266 (S.D.N.Y. 2014) ............................................................................ 8

*In re Sipex Corp. Sec. Litig.*,
  2005 U.S. Dist. LEXIS 30854 (N.D. Cal. Nov. 17, 2005) ............................................ 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ........................................................................................... *passim*

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
  672 F. Supp. 2d 596 (S.D.N.Y. 2009) .......................................................................... 6

*In re VeriFone Holdings, Inc. Sec. Litig.*,
  704 F.3d 694 (9th Cir. 2012) ....................................................................................... 4

*In re Worlds of Wonder Sec. Litig.*,
  35 F.3d 1407 (9th Cir. 1994) .................................................................................... 1, 7

*WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ..................................................................................... 1

*Zamir v. Bridgepoint Educ., Inc.*,
  2018 U.S. Dist. LEXIS 40247 (S.D. Cal. Mar. 12, 2018) ............................................ 5

*Zamir v. Bridgepoint Educ., Inc.*,
  274 F. Supp. 3d 1057 (S.D. Cal. 2017) ........................................................................ 5

**Rules**

Federal Rules of Civil Procedure, Rule 12(b)(6) ............................................................. 2

**Regulations**

34 C.F.R. § 668.14(b)(16) ............................................................................................... 2

34 C.F.R. § 668.28 ........................................................................................................... 2

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Bridgepoint and the Individual Defendants file this reply memorandum in support of their motion to dismiss ("MTD") Plaintiffs' Amended Class Action Complaint ("AC").[1]

## I.   INTRODUCTION

Plaintiffs' opposition brief ("Opposition" or "Opp.") only highlights the AC's two fundamental flaws: (1) this is an accounting restatement case based upon allegations sounding in negligence, which has been insufficient to plead securities fraud in the Ninth Circuit since at least *In re Worlds of Wonder Sec. Litig.,* 35 F.3d 1407, 1426 (9th Cir. 1994); and (2) there is nothing alleged in the AC that satisfies the *Tellabs* "cogent and compelling" standard for pleading scienter.[2]

As to the first point, the Opposition simply repeats the AC's negligence-based factual allegations, while characterizing the conduct alleged as being "reckless,"[3] which is itself revealing because the Ninth Circuit standard requires allegations supporting "*deliberate recklessness*," not ordinary recklessness.  *See WPP Lux. Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1051 (9th Cir. 2011) (the "requisite state of mind for a securities fraud case is . . . knowing or international conduct, or reckless conduct to the extent that it reflects some degree of intentional or conscious misconduct, or what we have called *deliberate recklessness*.")[4]  However, even if the AC had employed the

---

[1] As with their opening brief, Defendants refer in this reply brief to Zovio Inc by its prior name, Bridgepoint.  All "¶" reference herein are to the AC, and unless otherwise noted, all emphasis has been added, and we omit internal citations from quoted cases.

[2] *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 324 (2007) ("the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations").

[3] *E.g.,* Opp. at 3 ("[A]s for scienter, the Complaint's allegations of Defendants' recklessness easily outweigh Defendants' competing theory of mere negligence."); *see infra* n.7 for more examples.

[4] *See also Gebhart v. SEC*, 595 F.3d 1034, 1041 n.10 (9th Cir. 2010) (requiring "either knowledge of falsity or conscious recklessness," described as "deliberate recklessness,

1

correct terminology it would not really matter, because no matter how labelled, the AC's factual allegations sound in ordinary negligence.

As to the second point, after the MTD demonstrated that the AC had no real theory of scienter—much less anything "cogent and compelling" under *Tellabs*—the Opposition tried to come up with something new, namely the speculation that Defendants might have been "motivated" to avoid potentially violating the "90-10 Rule,"[5] and thus cheated on revenue recognition in order to appear to be compliant with that Rule.  Opp. at 1, 24.  This new theory is not alleged in the AC, and thus should be disregarded on that basis alone,[6] but if Plaintiffs had bothered to look up the facts, they would have seen from public SEC filings that Bridgepoint did not come close to violating the 90-10 Rule either before or after the 2018 Restatement.  It is hard to imagine something more antithetical to the central holding of *Tellabs* than Plaintiffs' inviting the Court join them in speculating about something not alleged in the AC, that would have no evidentiary support even if it were alleged.  This rather desperate attempt to satisfy the *Tellabs* pleading standard only highlights how frivolous this case truly is.

which we defined as conduct reflecting some degree of intentional or conscious misconduct").

[5] The 90-10 Rule required that Bridgepoint's educational institutions "had to generate at least 10% of their revenues from sources other than federal student aid under Title IV."  ¶ 88; *see generally* 34 C.F.R. §§ 668.14(b)(16), 668.28.

[6] *See, e.g., Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Bobbleheads.com, LLC v. Wright Bros., Inc.*, 259 F. Supp. 3d 1087, 1097 (S.D. Cal. 2017) (granting Rule 12(b)(6) motion where, even though unpled allegations in opposition brief might be sufficient for pleading purposes, they were "beyond the scope of the Court's review").

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

19cv0460-WQH-AHG

## II.    ARGUMENT

### A.    There Are No Allegations In The AC Satisfying The Standards Set Forth In *WOW* And Its Progeny Concerning Accounting Restatements.

This case arises following the result of the restatement of Bridgepoint's financials for the first three and nine months of 2018 (and revising 2016 and 2017 and the first two months of 2018) (the "2018 Restatement").  ¶¶ 5, 156-57.  The primary issue causing the 2018 Restatement had to do with Bridgepoint's accounting for students enrolled in its Full Tuition Grant ("FTG") program, which consisted of "various corporate partnerships [Bridgepoint entered into] with employers to offer their employees a way to pursue and complete a college degree without incurring student debt."  ¶ 97.  According to FE 1, Bridgepoint entered into "deals with hundreds of companies and their contracts were all very customized."  ¶ 132.  Bridgepoint's "old accounting software . . . was not configured adequately for revenue that was customized" (¶ 131), and as a result the Company "lost visibility of how scholarships were being recorded.'"  ¶ 133.   Summarizing, the AC says "[t]hese *errors* emanated directly from the Company's *failure to properly consider* in its financial statements the impact of students that had dropped out or become ineligible for its . . . FTG program, and specifically how such events impacted the collectability of student tuition . . . ."  ¶ 164.

That is the language of negligence.  Defendants' MTD pointed out that the closest the AC came to alleging something like intentional conduct was a passing reference that "Defendants were reckless in designing and/or employing the Company's processes for recognizing revenue."  ¶ 154.  The Opposition also repeatedly characterizes Defendants' alleged conduct as  "reckless." [7]  However, "[f]acts showing mere recklessness . . . are

---

[7] *E.g.,* Opp. at 12 ("Defendants were reckless in designing and/or employing the Company's processes for recording revenue, [etc.] for its FTG program in a manner that violated GAAP"); 14 ("the Class Period Restatement resulted in part from the Company's reckless failure to track which students in the FTG program were active (rendering it incapable of precisely calculating allowances with respect to students who had become inactive)"); 20 ("The Complaint 'contains extensive allegations of circumstantial evidence of recklessness . . . .'") (quoting *In re Silvercorp Metals, Inc.*

not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  While the Opposition makes a brief reference to the correct "deliberate recklessness" standard (Opp. at 16), there is nothing factual alleged in the AC that comes close to satisfying that standard.

Instead of alleging facts demonstrating intentionality, the AC offers quite the opposite, with factual allegations suggesting that the problems facing Bridgepoint in accounting for its FTG program were complex and beyond the capabilities of the systems then in place.  In addition, what the AC tries to pass off as recklessness is itself based on a falsehood, namely that in its 2016 From 10-K, "the Company announced that it had *fixed* its material weaknesses." ¶ 127.[8]  The purported logic behind this reasoning is that because Bridgepoint supposedly said a past problem had been "fixed," that carried with it a promise that new problems would never arise.  That is both legally erroneous,[9] and factually inaccurate, as Bridgepoint never said in its 2016 Form 10-K that its accounting issues had been "fixed."  Instead, as quoted in the AC, the 10-K actually said:

> **We have implemented measures to remediate the control deficiencies that gave rise to the material weaknesses**.  These measures include the hiring of new accounting personnel, provisions of additional training to new and existing personnel, and implementation of financial reporting risk assessments and review processes to ensure significant accounting policies are implemented and applied properly under GAAP . . . .  **We believe the**

---

*Sec. Litig.*, 26 F. Supp. 3d 266, 275 (S.D.N.Y. 2014)); 21 ("Defendants . . . continued to recognize revenues that they knew, or recklessly disregarded, were unlikely to materialize.").

[8] The Opposition repeatedly says that the Company announced that the "problems had in fact been *fixed*." Opp. at 3; *id.* at 20, 22 ("in March 2017, Defendants told investors that those problems had in fact been fixed").

[9] *See Acito v. Imcera Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995) ("defendants' lack of clairvoyance simply does not constitute securities fraud"); *Higgenbotham v. Baxter Int'l, Inc.*, 495 F.3d 753, 759-60 (7th Cir. 2007) ("[h]indsight is the only basis of the proposed inference — and, as the Court observed in *Tellabs* . . . there is no 'fraud by hindsight''').

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

19cv0460-WQH-AHG

***above measures have enabled us to remediate the control deficiencies that gave rise to the material weaknesses.*** We will continue to maintain appropriate focus on this critical accounting area going forward. ***We believe these measures have remediated control deficiencies and strengthen internal controls over financial reporting.***

¶ 127 (quoting 2016 Form 10-K; emphasis provided by Plaintiffs).

From this false "fixed" premise comes the Opposition's core theory, namely that the supposedly "eerily reminiscent" 2018 Restatement (Opp. at 20) demonstrated that the issues identified in the 2013 Restatement had not in fact been "fixed," and thus Defendants were supposedly reckless.

This is odd for several reasons. First, this Court dismissed with prejudice a prior securities class action based upon the 2013 Restatement. *See Zamir v. Bridgepoint Educ., Inc.*, 274 F. Supp. 3d 1057, 1069 (S.D. Cal. 2017) ("*Zamir I*") (GAAP allegations "fail[ed] to give rise to an inference—much less a strong inference—of deliberate wrongdoing."); *Zamir v. Bridgepoint Educ., Inc.*, 2018 U.S. Dist. LEXIS 40247, at * 23-24 (S.D. Cal. Mar. 12, 2018) ("*Zamir II*") ("Far from presenting a situation where Defendants' prior collectability assessment was a falsehood or so unreasonable, this situation represents a 'misapplication of accounting principles,'" such that "the more compelling inference . . . is that Defendants made a good faith but mistaken attempt to account for [its] students . . . .") (quoting *WOW*, 35 F.3d at 1426). While every case deserves to be examined independently, it is both strange and rather apt that Plaintiffs contend their case is "eerily" or "highly similar" (Opp. at 13) to one the Court dismissed with prejudice.

Second, while there are similarities regarding the types of issues giving rise to the 2013 and 2018 Restatements, they did not in fact involve "the same revenue recognition issues of collectability." Opp. at 21. The Court identified the central issue in the context of the 2013 Restatement as one of Bridgepoint's "accounts receivable system not separat[ing] or categoriz[ing] students with and without financial aid funding." *Zamir II*,

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

2018 U.S. Dist. LEXIS 40247, at *22.  In the current case, Plaintiffs' assertion is that "the Class Period Restatement resulted . . . from the failure to sufficiently track which students in the FTG program were active."  Opp. at 14.  That is not the same problem. What those two situations, across the span of five years, do have in common is that they involved revenue collectability assessments being applied to complex factual situations. But, what they also have in common, is the fact that in neither case was there a legally sufficient allegation that the accounting errors were the result of fraud.[10]

Third, the spartan facts alleged in the AC undermine the proposition that Defendants told the market that all of Bridgepoint's accounting issues had been "fixed." The alleged class period starts on March 18, 2016 (¶ 1), which occurs roughly two weeks *after* Bridgepoint announced it *still* had material weaknesses in its financial controls.  The AC asserts that "**as late as March 2, 2016**—when it filed its 2015 10-K—the Company still had to tell investors that 'there were material weaknesses in our internal control over financial reporting as of December 31, 2015, as we did not maintain effective controls over the accounting for revenue recognition.'"  ¶ 120 (Plaintiffs' emphasis).  That 10-K also said, "we have *not completed* all of the corrective processes and procedures and the related evaluation or remediation that we believe are necessary" (¶ 122, quoting 2015 10-K), and stated that the measures adopted "include[d] the hiring of new accounting personnel" (*id*.).

One of the "new accounting personnel" was FE 1, who "from 2016 to 2017 was

---

[10] Plaintiffs contend the 2013 restatement was a "glaring red flag[] that put the Defendants on notice that the Company had significant problems with respect to its practices of revenue recognition" (Opp. at 21), but Plaintiffs' case law on this point is inapposite.  *In re Countrywide Fin. Corp. Deriv. Litig.*, 554 F. Supp. 2d 1044, 1059-62 (C.D. Cal. 2008) involved a situation where the company's negative amortization increased from $29,000 to $654 million in two years due to pervasive use of no-documentation "liar loans" and "a rampant disregard for underwriting standards," including intentionally routing risky loans out of the underwriting process to obtain approval.  In *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 672 F. Supp. 2d 596, 608 (S.D.N.Y. 2009), the defendants wrote emails which made specific references to undisclosed internal control deficiencies.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

hired by Bridgepoint and focused on revenue recognition issues at the Company." ¶ 129. A serious problem that Plaintiffs fail to recognize is the utter incongruity of Bridgepoint hiring someone to focus on the very accounting issue it was supposedly trying to hide. According to the AC, FE 1 was hired from PwC, which allegedly was aware of accounting issues related to the FTG program. ¶ 134. There is no allegation that FE 1 was not freely permitted to discuss with Bridgepoint's new auditor, Deloitte, any concerns he or she might have had, nor any allegation that Deloitte (or PwC) was in on a supposed scheme to defraud. Nor does FE 1 allege that Bridgepoint either (1) ignored accounting issues related to the FTG program, or (2) adopted something other than GAAP to account for them. Instead, FE 1 criticizes Bridgepoint for adopting a "'patchwork fix'" (¶ 133), and using "old accounting software, which was not configured adequately" (¶ 131) to address the problem. Such allegations have been insufficient to plead securities fraud in the context of an accounting restatement since at least *In re Worlds of Wonder.*

"Scienter requires more than a misapplication of accounting principles. The plaintiff must prove that the accounting practices were . . . an *egregious refusal to see the obvious*, or to *investigate the doubtful*, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *N.M. State Inv. Council v. Ernst & Young LLP,* 641 F.3d 1089, 1098 (9th Cir. 2011). FE 1 speaks to the fact that problems arose in the face of considerable complexity, and Plaintiffs' case is based on the absurd proposition that because a problem involving complexity became evident in connection with the 2013 Restatement, Defendants were reckless because they did not anticipate a different complex problem in connection with the 2018 Restatement. That does not support an "egregious refusal to see the obvious, or to investigate the doubtful." For one thing, the steps Bridgepoint took to address issues related to the 2013 Restatement—including the hiring of FE 1—are not alleged not to have been undertaken. They were just insufficient to anticipate a future problem. That is not securities fraud.

7

The Opposition's discussion of supposedly supporting case law (Opp. at 15-23) only illustrates how far the AC falls short of satisfying the relevant pleading standard, as the cases cited describe allegations of intentionality that are wholly absent here.  For example, *Reese v. Malone*, 747 F.3d 557 (9th Cir. 2014) arose in the aftermath of an oil spill where the defendant made knowingly false statements about pipeline corrosion data prior to the spill.  Similarly, *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) featured a CEO signing off on false financial statements despite "potentially alarming information concerning [the company's] financial condition." [11]

The Opposition also ignores the case law discussed in Defendants' MTD, to the effect that each of the Individual Defendants has an individual right to have his circumstances separately evaluated, and thus a complaint must allege "how or when *each defendant* became aware of the allegedly improper accounting practices" and "the extent of *each defendant's* contribution or involvement."  *In re Pac. Gateway Exh., Inc., Sec. Litig.*, 169 F. Supp. 2d 1160, 1167 (N.D. Cal. 2001).[12]  Yet, there is nothing alleged in

---

[11] The Opposition is replete with similar cases.  *E.g., In re McKesson HBOC, Inc. Secs. Litig.*, 126 F. Supp. 2d 1248, 1273-74 (N.D. Cal. 2000) (GAAP violations were accompanied by internal reports showing that executives segregated side letters from contracts, deleted computer files, and engaged in intentional accounting misstatements); *In re Sipex Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30854, at *3 (N.D. Cal. Nov. 17, 2005) (company's internal investigation determined restatement was caused by fraud and CEO "personally orchestrated a sham 'sale'"); *In re Silvercorp Metals, Inc. Sec. Litig.*, 26 F. Supp. 3d at 275-76 (company paid Chinese authorities to arrest and detain analyst who disclosed its fraudulent practices); *In re ArthroCare Corp. Sec. Litig.*, 726 F. Supp. 2d 696, 712 (W.D. Tex. 2010) (following articles detailing fraudulent practices, CEO "continued to reassure investors the reports were lies, rumor-mongering, and propaganda by short sellers for some six months after they were published"); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 648 (S.D.N.Y. 2007) (company had 'the worst record in the industry,'" and was "accused of improperly shifting client funds between related party accounts and paying off its own debt"); *In re Seitel, Inc. Sec. Litig.*, 447 F. Supp. 2d 693, 707 (S.D. Tex. 2006) (auditor hid "the fact that [the company] based its revenue recognition policies on accounting standards directly applicable to the movie industry, and not on accounting literature specific to the seismic data industry").

[12] *See In re A-Power Energy Generation Sys. Ltd. Secs. Litig.*, 2012 U.S. Dist. LEXIS 79417, at *39 (C.D. Cal. May 31, 2012) (granting dismissal because "the Complaint

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

the AC about the specific roles played by any of the Individual Defendants in connection with this supposedly reckless scheme.

It is quite revealing that the Opposition's sole response to this criticism refers not to this case, but to a completely different securities class action, involving a different corporate defendant, where Bridgepoint's CFO  (Kevin Royal), was previously employed.   Opp. at 8-9.  While it is obvious that this unrelated case should have no bearing on the outcome of this one, Plaintiffs also omit the punch line, which is that the case against Maxwell Technologies—like the case against Bridgepoint in connection with the 2013 Restatement—was also dismissed for its failure to state a claim.  *See In re Maxwell Techs. Inc., Sec. Litig.,* 18 F. Supp. 3d 1023, 1046 (S.D. Cal. 2014).

**B.**     <u>**Plaintiffs' Post-Filing Theory of Fraud Is The Antithesis of *Tellabs*.**</u>

Confronted with the fact that the AC failed to allege any theory of scienter at all— e.g., no allegations of unusual insider trading, or of accounting gimmickry done in order to satisfy analysts' expectations—the Opposition came up with a brand new theory that Defendants might have been "motivated" to deliberately misreport revenue for fear of violating the 90-10 Rule.  Opp. at 24 ("Defendants had a strong, unique motive to engage in improper accounting" related to the 90-10 Rule).  The first thing to note is that this theory is clearly an afterthought.  While the 90-10 Rule is referenced in the AC (¶¶ 87-92), that only occurs in the context of describing the regulatory environment within which Bridgepoint had to comply, and a desire to maintain compliance with law, along with other such ordinary motives, is insufficient to plead securities fraud.[13]

---

attempts to assign blame for any alleged securities fraud to [individual defendants] without actually identifying their specific connection to or responsibility"); MTD at 3 (discussing similar cases).

[13] *See Novak v. Kasaks,* 216 F.3d 300, 307 (2d Cir. 2000) ("Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including . . . the desire to maintain a high corporate credit rating or otherwise sustain the appearance of corporate profitability, or of success of an investment."); *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,* 553 F.3d 187, 198 (2d Cir. 2009) ("Motives that are common to most corporate officers . . . do not constitute 'motive' for purposes of

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Next, the AC contains no allegation that the 2018 restated financials came close to violating the 90-10 Rule.  The AC does not allege that the difference between originally reported, and restated results, significantly affected Bridgepoint's 90-10 Rule compliance, nor could it do so in good conscience.  Bridgepoint's compliance with the 90-10 Rule is reported in Bridgepoint's SEC filings, and Plaintiffs' could have referenced Bridgepoint's publicly reported compliance before and after the 2018 Restatement to show how close Bridgepoint allegedly came to stepping over the line, and thus how "motivated" Bridgepoint might have been to cheat.  But Plaintiffs do not reference those numbers, because they would not tell a story helpful to their cause.  The sole former employee referenced in the AC also has absolutely nothing to say about this topic.  Plaintiffs' invitation that the Court join them in speculating about what might have been alleged is the very antithesis of what *Tellabs* requires, and this desperation play only reveals a party lacking a viable core theory of fraud.

## III.   CONCLUSION

This is an utterly frivolous case that should be dismissed with prejudice.   The Opposition offers no indication that Plaintiffs have any ideas regarding how the Amended Complaint could be improved so as to satisfy the *Tellabs* "cogent and compelling" pleading standard, and the Opposition's desperate attempt at describing a potentially viable theory (outside of what is currently pled in the AC) only illustrates the vacuity of Plaintiffs' underlying theory of fraud.

DATED:  February 11, 2020          GREENBERG TRAURIG, LLP


                                    By      */s/ Daniel J.  Tyukody*
                                            Daniel J. Tyukody
                                            Attorneys for Defendants
                                            Bridgepoint Education, Inc., *et al.*

this inquiry."); *Seaman v. Cal. Bus. Bank*, 2013 U.S. Dist. LEXIS 155919, at *19 (N.D. Cal. Oct. 30, 2013) ("Motive alone does not establish a strong inference of scienter.")

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS